MERCHANTS MUTUAL CASUALTY COMPANY, Appellant, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Respondent, Impleaded with THE CITY OF BUFFALO, Defendant.

Fourth Department, January 5, 1938.

*Adrian Block*, for the appellant.

*S. H. Millener*, for the respondent.

LEWIS, J. As an aftermath of a default by a primary contractor in the construction of a public improvement, we are to determine whether the plaintiff corporation is a third party beneficiary of a contractor's surety bond.

The plaintiff furnished compensation and liability insurance to Chippewa Company, Inc., which in turn had a contract with the city of Buffalo to construct a public work project known as the Fillmore-Lovejoy storm sewer. When Chippewa Company defaulted on its contract, its debts included plaintiff's claim of $8,503.33 for insurance premiums. Failing in its effort to collect from Chippewa Company, which is now an adjudicated bankrupt, the plaintiff brought the present action against the defendant surety which had given its bond to the city conditioned upon the faithful performance of the contract. Upon the trial the city, although originally a party defendant, was permitted to withdraw from the case by consent of all parties when it appeared that defendant's bond was more than adequate to protect the city's interests.

Section 666, subdivision (a), of article 33 of the Buffalo City Charter* provides that in the performance of work for the city a contractor " shall give an undertaking * * * for the faithful performance

* Buffalo Local Laws of 1927, No. 4, published in Local Laws of New York for 1932, p. 21.— [REP.

of the contract, which undertaking shall provide, among other things, that the person or corporation entering into the contract with the city will pay for all materials and services rendered in the execution of the contract, and that any person or corporation furnishing such materials or rendering such services may maintain an action to recover for the same against the obligors in the undertaking as though such person or corporation was named therein."

In line with this charter provision, section 11 of chapter 3 of the City Ordinances, which was continued in force by section 691 of the present charter, reads as follows: " Every bond * * * shall contain a clause that the person * * * entering into such contract with the city will pay for all materials used and services rendered in the execution of such contract, and any person * * * furnishing materials or rendering services in or about the execution of such contract may maintain an action to recover for the same against the obligors."

The condition of the bond, with which we are concerned, given by the defendant surety, provides in part: " that if the above bounden Chippewa Company, Incorporated, shall well and truly and in good and sufficient manner faithfully and completely perform the said contract *in accordance with the terms and stipulations therein contained, and shall in every respect strictly comply with and be bound by said contract* and the plans and specifications therein referred to, and shall well and truly perform all the labor and furnish all the materials necessary to fully complete the work or improvements therein contemplated, and shall well and truly pay all lawful claims of sub-contractors, materialmen or other *third persons arising out of or in connection with said contract or the work performed thereunder*, then this obligation shall be void, otherwise to remain in full force and effect; provided, however, and we agreeing and assenting that any sub-contractor, materialmen, laborers and *third persons having just claims arising out of or in connection with the execution of the contract* may maintain an action to recover for the same against the obligors in this bond as though such persons were named therein."

Among the obligations which Chippewa Company was required to assume, and did assume " in accordance with the terms and stipulations " of its contract with the city, was to furnish compensation insurance for all employees engaged in the work and to indemnify the city against damages arising from injury to person or property by reason of negligence by the contractor or its agents. In accord with these requirements Chippewa Company met its obligation to the city in that regard by purchasing from the plaintiff

liability and compensation insurance, which we may assume has proved adequate but for which the plaintiff has not been paid.

Under these circumstances we believe that plaintiff's present action in aid of its claim as a third party — " arising out of or in connection with the execution of the contract " is legally enforcible under the condition of the defendant's bond.

In reaching that conclusion, which involves the rights of a third party beneficiary of a promise, we are called upon to apply rules of law which have undergone definite change. " In the field of the law of contract there has been a gradual widening of the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268), until today the beneficiary of a promise, clearly designated as such, is seldom left without a remedy. (*Seaver* v. *Ransom*, 224 N. Y. 233, 238.) Even in that field, however, the remedy is narrower where the beneficiaries of the promise are indeterminate or general." (*Ultramares Corp.* v. *Touche*, 255 N. Y. 170, 180. Cf. *Wilson* v. *Costich Co., Inc.*, 231 App. Div. 346, 348–351; affd., 256 N. Y. 629.)

In the case at bar the " beneficiaries of the promise " are neither indeterminate nor general. They include only those whose claims — within the terms of the surety's agreement — arise " out of or in connection with said contract or the work performed thereunder." A bond such as the one we are now considering, which is conditioned to be void on fulfillment by the principal contractor of its obligations under the contract, is in legal effect a promise by the surety either that all contract obligations will be performed, or that the promisees will be indemnified within the limit of the penalty in case of non-performance. Such being the surety's agreement we believe it may be fairly said that; given a contract such as the one before us, which specifically requires of a contractor that he furnish compensation and liability insurance incidental to the work involved, an unpaid creditor which has furnished that insurance may enforce payment therefor against the surety. (*McFarland* v. *Rogers*, 134 Me. 228; 184 A. 391.)

The extent of an undertaking is determined by the surety's words of express promise. Accordingly, in the case before us, we need not strain the words of the defendant's bond to hold that third parties, within a definite class, were intended as its beneficiaries. We find in the language of the condition of the bond as adopted by the defendant the essential " clear intent " to benefit a class of creditors of which the plaintiff is one. (*McClare* v. *Mass. Bonding & Ins. Co.*, 266 N. Y. 371, 377, 378; *Fosmire* v. *National Surety Co.*, 229 id. 44, 48.) And although the consent expressly given in the bond by the defendant surety to an action by such third parties may not have been necessary to create a

right of action in the plaintiff, it serves now to show the legal relation which the parties to the bond intended to create. (Corbin, " Third Parties as Beneficiaries of Contractors' Surety Bonds," 38 Yale Law Journal, 1, 18.)

It is said by the defendant surety that the provisions of the Buffalo City Charter and the city ordinance already quoted do not authorize a contractor's bond broad enough in terms to include beneficiaries such as this plaintiff. That argument disregards the fact, which is important to our inquiry, that the provision which the city inserted in the contract that " This contract shall be void and of no effect unless persons or corporations making or performing the same shall secure compensation for the benefit of and keep insured during the life of this contract the employees engaged thereon, in compliance with the provisions of * * * the ' Workmen's Compensation Law,' " was in compliance with the mandatory requirement of section 90 of the General Municipal Law. Furthermore, defendant's argument in that regard is unavailing here because where the surety's promise goes beyond statutory requirements we may give it effect as a common-law obligation. (2 Williston on Contracts [Rev. ed.], § 372, p. 1088. Cf. *McClare* v. *Mass. Bonding & Ins. Co., supra.*)

In this connection it may be added that the defendant cannot now be heard to say that the city had no power to require such a bond. Since the inception of the work the defendant and its principal have enjoyed benefits which came from the insurance purchased from the plaintiff and which satisfied a specific requirement of the contract. We may assume that when the defendant executed its bond, conditioned upon the payment by its principal of " all lawful claims of * * * third persons arising out of or in *connection with said contract* or the work performed thereunder," it agreed to the language employed to define the limits of its undertaking. It presumably knew the law and knew the terms of the contract, the performance of which it was about to guarantee. As neither the statute nor the terms of the contract have since been changed the defendant cannot now successfully resist the plaintiff's claim by a plea which asserts the invalidity of the bond which it executed under that statute and contract and which, as a compensated surety, it then held out as valid. (*McClare* v. *Mass. Bonding & Ins. Co., supra,* p. 375.)

The judgment dismissing plaintiff's complaint upon the merits and awarding costs to the respondent should be reversed on the law, with costs, and, in view of the concession of record that the sum stated in the complaint as due to plaintiff for premiums is correct in amount, judgment should be directed in favor of the

plaintiff against the defendant United States Fidelity and Guaranty Company for $8,503.33, with interest from October 13, 1934, with costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Judgment reversed on the law, with costs, and all allegations of the complaint being admitted either in the amended answer or upon the trial, judgment directed in favor of the plaintiff against the defendant United States Fidelity and Guaranty Company for $8,503.33, with interest from October 13, 1934, with costs.