## Pittsburgh, to use, Appellant, *v.* Parkview Construction Co., Inc., et al.

Argued October 3, 1941; re-argued Jan. 5, 1942. Before Schaffer, C. J.; Maxey, Drew, Linn, Stern and Parker, JJ.

*Nathan H. Leventon,* with him *Maurice Louik,* for appellant.

*J. Roy Dickie,* of *Dickie, Robinson & McCamey,* and *Charles A. Woods, Jr.,* for appellee.

Opinion by Mr. Justice Stern, January 20, 1942:

This action is to recover on two instruments, one a labor and materialmen's bond, the other a performance bond, executed by Parkview Construction Company, Inc. as principal and Continental Casualty Company as surety, the obligee being the City of Pittsburgh. The

Construction Company entered into a contract with the City to do certain repaving work; the contract required the furnishing of these bonds. The condition of the labor and materialmen's bond was that "if said principal and all sub-contractors to whom any portion of the work provided for in said contract is sub-let and all assignees of said principal and of such sub-contractors shall promptly make payment for all labor performed, services rendered, and materials furnished in the prosecution of the work provided for in said contract, or in any amendment or extension of or addition to said contract, then the above obligation shall be void; otherwise to remain in full force and effect." The condition of the performance bond was that "if the principal shall faithfully perform the contract on his (sic) part at the time and in the manner therein provided and satisfy all claims and demands incurred in or for the same, or growing out of the same, . . . and shall fully indemnify and save harmless the said obligee from any and all cost and damage which the said obligee may suffer by reason of failure to so do, and shall fully reimburse and repay the said obligee any and all outlay and expense which it may incur by reason of any such default, then this obligation shall be null and void; otherwise it shall remain in full force and virtue."

According to the averments of the statement of claim the contract between the City and the Construction Company provided that the latter should take out and maintain during the life of the contract workmen's compensation insurance for all employees employed at the site of the project, and also insurance to protect the Construction Company and sub-contractors from claims for personal injury and property damages arising from the operation; the Construction Company was not to commence work under the contract until all such insurance had been obtained and approved by the City. H. M. Kamin Agency, Inc., the use-plaintiff, furnished to the Construction Company, allegedly in reliance upon the bonds given by the latter to the City, policies covering

workmen's compensation, public liability and property damage, and contractor's contingent public liability and property damage insurance, which policies were delivered by the Construction Company to the City in pursuance of the contract. The Construction Company agreed to pay to use-plaintiff the premiums on these policies but failed to do so, and the present action seeks recovery on the bonds for the amount thus due. Defendants filed affidavits of defense raising questions of law, contending that the bonds did not cover use-plaintiff's claim; the court adopted this view and entered judgment in defendants' favor. Use-plaintiff appeals.

As far as the labor and materialmen's bond is concerned, the court below properly determined that the policies did not fall within the description of "labor performed, services rendered, and materials furnished in the prosecution of the work provided for in said contract." It would be extending those terms beyond their normal meaning to interpret them as embracing contracts of insurance. There is an abundance of authority * to the effect that the payment of premiums for insurance policies does not fall within the obligation of such a bond.

For some reason not apparent the court did not give consideration to the terms of the other bond on which the present suit is based, and which was conditioned on

---

* *State ex rel. v. Padgett*, 54 N. Dak. 211, 209 N. W. 388; *Warner Co. v. Schoonmaker*, 20 Del. Ch. 165, 174 A. 449; *Lumbermen's Mutual Casualty Co. v. Underhill Construction Co.*, 149 Kans. 684, 88 P. 2d 1107; *Employers' Liability Assurance Corporation v. Cannon*, 173 Okla. 493, 49 P. 2d 103; *Seibels, Bruce & Co. v. National Surety Corp.*, 63 Ga. App. 520, 11 S. E. 2d 705; *Southern Surety Co. v. Metropolitan Sewerage Commission*, 187 Wis. 206, 201 N. W. 980; *Employers' Mutual Liability Insurance Co. v. Grahl Construction Co.*, 203 Wis. 315, 234 N. W. 326; *Bay State Dredging & Contracting Co. v. Ellis & Son Co.*, 235 Mass. 263, 126 N. E. 468; *Anderson v. U. S. Fidelity & Guaranty Co.*, 44 N. Mex. 483, 104 P. 2d 906; *New Amsterdam Casualty Co. v. Detroit Fidelity & Surety Co.*, 187 Ark. 97, 58 S. W. 2d 418; *Southern Surety Co. v. State ex rel. Travelers Insurance Co.*, 90 Ind. App. 309, 165 N. E. 444.

the faithful performance of the contract between the Construction Company and the City. As one of the terms of the contract was that the Construction Company should take out and maintain the policies, that obligation was accordingly covered by the bond, as was also the duty to "satisfy all claims and demands incurred in and for the same, or growing out of the same." Since the Construction Company, by failure to pay the premiums, did *not* satisfy the claim incurred for the policies, the condition of the performance bond was breached and the surety became liable accordingly. The phraseology of the bond being clear and unambiguous, there is here no problem of interpretation. In *McFarland v. Rogers,* 134 Me. 228, 184 A. 391, the condition of the bond was that the contractor should "faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same"; the contract provided that the contractor should maintain certain insurance. It was held that the surety on the bond was liable for the premiums on the policies. Similarly, in *Building Contractors' Limited Mutual Liability Insurance Co. v. Southern Surety Co.,* 185 Wis. 83, 200 N. W. 770, under an identical provision, the performance bond was held to cover the premiums for the insurance which the contractor was required by the building contract to maintain. And in *Merchants Mutual Casualty Co. v. United States Fidelity & Guaranty Co.,* 253 App. Div. 151, 2 N. Y. S. (2d) 370, the same conclusion was reached where the bond contained slightly different but substantially similar language.

Under the now well settled law of the state, persons who, like use-plaintiff, have claims against a contractor and are within the terms of the performance bond have a right of action thereon as beneficiaries of the obligation (*Commonwealth v. Great American Indemnity Co.,* 312 Pa. 183, 190-192, 167 A. 793, 796, 797; *McClelland v. New Amsterdam Casualty Co.,* 322 Pa. 429, 432, 185 A. 198, 200). Nor is the right of use-plaintiff curtailed

by the Act of June 23, 1931, P. L. 1181, which provides that where a performance bond is given by a contractor in connection with any public work, and such bond includes a condition for the payment of material furnished and labor supplied or performed, and no separate or additional bond conditioned for the payment of material furnished and labor supplied or performed has been taken, any person furnishing material or supplying or performing labor in connection with the work, and who has not been paid, may become a party to any action instituted on the bond and obtain judgment thereon for the amount due him. This statute was enacted at a time when the law of the Commonwealth, under the decision in *Greene County v. Southern Surety Co.*, 292 Pa. 304, 141 A. 27 (overruled in *Commonwealth v. Great American Indemnity Co.*, 312 Pa. 183, 201, 167 A. 793, 800; see *McClelland v. New Amsterdam Casualty Co.*, 322 Pa. 429, 432, 185 A. 198, 200), denied to those furnishing labor and material to a contractor the right, in the absence of express statutory authority, to recover on the contractor's bond, either in their own names or in that of the obligee, and the Act of 1931 was intended, as the discussion attending its passage in the legislature shows (IV Legislative Journal, 1931, pp. 5442, 5812), to overcome that decision by granting permission to sue in such cases on the performance bond if there was no other on which a statute permitted suit. As now declared by our decisions the right of the beneficiary to sue on such a bond exists at common law, and the act in no wise limited that right but, on the contrary, sought to establish it. Moreover, by its terms, the act is applicable only to those furnishing material or supplying or performing labor in connection with the work, and not to a claim such as that of use-plaintiff, which, as already discussed, and, indeed, as insisted upon by defendants themselves, does not come within the category of material furnished or labor supplied or performed.

The judgment is reversed, and the record remitted with a procedendo.

CONCURRING OPINION BY MR. JUSTICE DREW:

It is clear that the claim of use-plaintiff does not fall within the terms of the labor and materialmen's bond here in question. A careful reading of the bond in its entirety shows that no such intention was within the contemplation of the parties. While this bond is conditioned upon the "payment for all labor performed, services rendered, and materials furnished", yet by other provisions it defines and limits the meaning of these words. The bond specifies that the only persons who shall have a right of action thereunder are those who have "furnished materials or machinery to be used on or incorporated in the work or the prosecution thereof . . . or . . . engaged in the prosecution of the work provided for in said contract . . . who is an agent, servant, or employee of the principal or of any sub-contractor, or of any assignee of said principal or of any sub-contractor, and also anyone so engaged who performs the work of a laborer or of a mechanic regardless of any contractual relationship between the principal, or any sub-contractor, or any assignee of said principal or of said sub-contractor, and such laborer or mechanic . . ." Thus, it is readily apparent that the words "services rendered" in the condition of the bond was not intended to cover claims of those who furnished the insurance required by the contract.

As to the performance bond, however, it appears equally clear that the payment of such claims as that of use-plaintiff was intended. This bond provides not only that the contractor "shall faithfully perform the contracts", but also that he shall "satisfy all claims and demands incurred in or for the same, or growing out of the same." The only logical inference is that the parties inserted the former of these provisions for the protection of the City of Pittsburgh, and the latter for the benefit of

the creditors of the contractor as donee beneficiaries. Certainly it cannot be reasonably supposed that both provisions were intended for the sole protection of the municipality, for obviously the City of Pittsburgh could not be held liable for such claims and demands, nor could liens therefor be filed against its property. In this connection it, was aptly stated in Williston on Contracts, Vol. Two, Sec. 372, pp. 1084-1085: "It is a common stipulation in a building contract that the contractor will pay all bills for labor and materials. . . . But the trend of authority is to regard the surety as promising the owner to pay such claims in discharge of the contractor's obligation thereon and to permit the laborer or materialman to sue on this promise as a beneficiary [citing *Concrete Products Co. v. U. S. Fid. & Guar. Co.*, 310 Pa. 158]. . . . If an intent can be found to confer a right on the laborers and materialmen, they come within the definition in the Restatement of Contracts of donee beneficiaries. Where the owner of the building is a municipality, school district, county, or state there can be no inference that the owner desired the promise for his own benefit, since the laws give no liens against the buildings of such owners. In such cases if the stipulation can be regarded as the result of more than the accidental insertion of a provision common in building contracts without reflection as to its necessity, it must be supposed that the object was to benefit creditors of the contractor." Furthermore, it was said by Professor Arthur L. Corbin of Yale Law School, in an article on "Third Parties as Beneficiaries of Contractors' Surety Bonds", on page 667 of "Selected Readings on the Law of Contracts", and cited with approval in *Concrete Products Co. v. U. S. Fid. & Guar. Co.*, supra: "We should now start with the general proposition that two contracting parties have power to create rights in a third party. . . . We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes

134

[page 677]. The words used in building contracts and in accompanying surety bonds are now usually such that they are, and should be, interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor. . . . In this class of cases it is sound policy to interpret the words liberally in favor of the third parties."

This Court has definitely decided that where there is a provision in a bond to pay third parties, who can be ascertained, such third parties have a right of action on the bond: *Com. v. Great American Indemnity Co.*, 312 Pa. 183; *McClelland v. New Amsterdam Casualty Co.*, 322 Pa. 429. See also Restatement of the Law of Contracts, sections 133, 135, 139; University of Chicago Law Review, Vol. 3, page 1; 9 Am. Juris. sec. 97, page 63. Where a bond contains the broad expression that "all claims and demands incurred" as does the one in the instant case, or similar phraseology, the great weight of authority holds that insurance premiums are covered thereby. It was said in 129 A. L. R. 1092: "A majority of the cases upon the point and within the scope of this annotation hold that insurance premiums are covered by a contractor's bond conditioned upon the faithful performance of the contract and the payment of all claims or debts incurred in connection with the performance of the contract, where the contractor is required by his agreement to maintain the insurance. *McFarland v. Rogers*, 134 Me. 228, 184 A. 391; *Merchants Mut. Casualty Co. v. United States Fidelity & G. Co.*, 253 App. Div. 151, 2 N. Y. S. (2d) 370; *Building Contractors' Limited Mut. Liability Ins. Co. v. Southern Surety Co.*, 185 Wis. 83, 200 N. W. 770."

Furthermore, since *Greene Co. v. Southern Surety Co.*, 292 Pa. 304, was overruled by this Court in *Com. v. Great American Indemnity Co.*, supra, I am thoroughly convinced that the Act of June 23, 1931, P. L. 1181, in no way limits the right of third party donee beneficiaries, under the circumstances here presented, to sue upon a performance bond.

Therefore, for these reasons and those set forth in the majority opinion, I agree that the judgment should be reversed and a procedendo awarded.