## McKinley v. Johnstown Traction Company

*Samuel R. DiFrancesco*, for plaintiff.

*Shettig & Swope* and *A. Loyd Adams*, for defendant.

Before McCann, P. J., McKendrick and Griffith, JJ.

GRIFFITH, J., December 23, 1946.—This case came before the court upon a statement of agreed facts. The facts as agreed upon may be summarized as follows:

On January 15, 1940, plaintiff was employed as a bus driver by defendant, and was at all times during his employment a member of the Amalgamated Association of Street Electric Railways and Motor Coach Employees of America, Divsion No. 1279, hereinafter called the union.

On July 11, 1944, the agreement between the company and the union, which was the collective bargaining agent for plaintiff and all other employes of the company, expired. Whereupon the union and the company entered into collective bargaining negotiations.

On October 7, 1945, plaintiff voluntarily terminated his employment with the company, but the negotiations between the company and the union continued.

On March 26, 1946, a new contract was signed by the company and the union. This contract provided, inter alia: "This agreement shall be retroactive to and effective as of July 10, 1944, unless specifically herein provided otherwise, and shall be in full force until and including July 13, 1946." There is no other provision in the contract which restricts the retroactive feature to those employes who were still in the employ of the company as of the date of the signing of the contract.

The employes who remained in the employ of the company until the date the new contract was signed were paid the difference in wages between the scale called for in the old contract and that set forth in the new one for the period between July 11, 1944, and March 26, 1946.

Plaintiff and those other employes who had terminated their services with the company prior to the date of signing the new contract were not paid the difference between the old scale and the new scale, for the reason that defendant contended that the union ceased to represent plaintiff, and those in his category, since he voluntarily terminated his employment on October 7, 1945, and particularly that the union did not represent

plaintiff at the time the new retroactive contract was signed on March 26, 1946, since by leaving defendant's employ, he had ceased to be a member of the union.

It was agreed that if plaintiff is entitled to recover at all, the difference in his pay under the old and new contracts from July 11, 1944, to October 7, 1945, would amount to $170.56, less one percent for social security tax and 19 percent which defendant would be required to withhold and pay to the collector of internal revenue under the United States Income Tax Law, or the sum of $136.45.

There is no dispute that the union represented plaintiff in the collective bargaining negotiations from July 11, 1944, until the date plaintiff terminated his services with the company on October 7, 1945.

We are of the opinion that this representation continued and that the union still represented plaintiff as of the date the contract was signed on March 26, 1946. At any rate, plaintiff is, at least, a donee beneficiary in respect to such contract. Until the case of Commonwealth v. Great American Indemnity Co., 312 Pa. 183 (1933), the right of a donee beneficiary to sue on a contract in Pennsylvania was narrowly restricted, although he had the right in 44 other States.

In Logan v. Glass, 136 Pa. Superior Ct. 221, 226, the court said:

"The view, suggested in the Restatement and prevailing in this country, that a donee beneficiary has an unqualified right of action to enforce the duty of the promisor to perform the promise, is now, and has been for some years, recognized by the appellate courts of this Commonwealth." See also Pittsburgh v. Parkview Construction Co., Inc., et al., 344 Pa. 126.

In the Great American Indemnity case, supra, the court quoted several sections from A. L. I. Restatement of Contracts which are pertinent to this issue. Section 133:

"Where performance of a promise in a contract will benefit a person other than the promisee, that person is, . . .

"(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee . . . is . . . to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary."

The performance of the promise of defendant in this case to pay an increased wage retroactively would benefit plaintiff. The terms of the promise coupled with the accompanying circumstances that plaintiff continued to work during the larger part of the long period of negotiations demonstrate that one of the purposes of the promise was to confer upon him the right to collect the increased wage from the promisor company. Also, section 135: "(a) A gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit." Section 139 says: "It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made."

We believe that the contract of March 26, 1946, was made for the benefit of plaintiff, as well as for those who remained in the employ of the company, and others who had been employed by the company and had been members of the union, but had left the employ of the company before the signing of the new contract.

It will be noted that the contract is specifically made retroactive to and effective as of July 10, 1944. This language seems to clearly contemplate the inclusion within its terms of all those employes who had been members of the union and employed by the company between July 10, 1944, and the date of the signing of

the contract. Since it was made "effective as of July 10, 1944," it must be considered as if it had been made on that date. If it had been made on July 10, 1944, there could have been no dispute regarding plaintiff's right to pay at the new rate, for he was then an employe of the company and a member of the union. By making the contract retroactive, the same result was obtained and plaintiff is entitled to its benefits.

In the case of McNeill v. Peoples Life Insurance Co., 43 A. (2d) 293 (Court of Appeals for District of Columbia), the previous agreement between the company and the union expired March 31, 1942. Collective bargaining negotiations resulted in a new contract executed on October 30, 1942, but the effective date of said contract was postponed until February 1, 1943, due to the necessity of obtaining the approval of the War Labor Board. The new contract contained a retroactive feature such as the one now before us. Plaintiff in that case continued in the employ of the insurance company until January 15, 1943, and was paid under the old rate. He brought suit for the increased compensation provided for by the new contract, whose effective date was February 1, 1943, or approximately two weeks after he ceased to be an employe of the insurance company. He was permitted to recover, and the court said (p. 294):

"To deprive him of the increased pay simply because he was not employed on the so-called effective date of the contract would, in our opinion, require plain and express language in the contract to that effect. We find no such language."

In the case of Greleck v. Amsterdam, 20 D. & C. 351, an employe was permitted to recover against an employer who had signed the President's Reëmployment Agreement under the National Industrial Recovery Act of June 16, 1933, Stat. at L. 195. The suit was for the difference between the wage actually paid and the minimum wage prescribed by the reëmployment

agreement. The court held that the employe may maintain his action on defendant's agreement with the President as a third-party beneficiary, although no consideration for defendant's agreement moved from the beneficiary to defendant.

Believing that the intention of the agreement entered on March 26, 1946, was to include plaintiff, we enter the following

### Decree

And now, December 23, 1946, after argument and upon due consideration, we find for plaintiff in the sum of $170.56, from which it was agreed must be deducted one percent for social security tax, or $1.70, and 19 percent for United States income tax, or $32.41; and the Prothonotary of Cambria County is directed to enter a judgment in favor of plaintiff and against defendant for the difference, or $136.45.