Peter J. Mascaro Co., Appellant, *v.* Milonas.

Argued September 28, 1960.   Before Jones, C. J.,
Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Abraham Pervin,* with him *Sachs, Pervin & Kaufman,* for appellants.

*J. M. McCandless,* with him *Kenneth P. Christman,* for appellees.

OPINION BY MR. JUSTICE BOK, December 1, 1960:

This is a suit by a subcontractor against a sub-subcontractor and his surety. The court below sustained preliminary objections to the amended complaint and dismissed it as to both defendants. The plaintiff is the Mascaro Company, a partnership, one of whose partners is dead and is represented by the executors of his estate. We will consider the case against each defendant separately, beginning with the surety.

The factual scaffolding is that Bero Construction Company had a prime contract with the Ohio Turnpike Commission to build part of the Ohio Turnpike. Bero then made a subcontract with Mascaro for part of the work under the Bero contract, and Mascaro made a sub-subcontract with the defendant Milonas for part of the work under the Mascaro contract.

Under the sub-subcontract Milonas engaged to build certain concrete abutments and decks, agreeing that the work be done in accordance with the Turnpike Commission's plans and also with "the terms and con-

ditions which are part of your [Mascaro's] contract with" Bero under the subcontract. One of Mascaro's obligations under the subcontract was to give Bero a bond "conditioned upon the faithful performance of this contract, the payment of all labor and material bills, and such other obligations as required by the Ohio Turnpike Commission."

The sub-subcontract does not contain in specific terms an agreement by Milonas to pay bills or claims contracted by him during the work. Neither does the subcontract contain in specific terms a promise by Mascaro to pay bills or claims. Hence the reference in the sub-subcontract to the terms of the subcontract cannot be construed as a specific agreement by Milonas to pay such bills and claims.

Milonas provided a bond, as the sub-subcontract called on him to do, with his co-defendant as surety. It bound them to Mascaro upon the condition that "if the Principal [Milonas] shall indemnify the Obligee [Mascaro] against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract, then this obligation shall be void . . ."

Plaintiff averred that Milonas could not complete his contract and that Bero, the prime contractor, removed him and finished the job for the plaintiff's account, paying for it out of plaintiff's money retained by Bero under the terms of the subcontract. The sums claimed were for bills incurred by Milonas.

To this pleaded state of affairs the insurance company filed a demurrer, which the court below sustained.

This action was correct. The bond protected only the performance of the contract and not bills and claims, there being nothing in either contract to bring the latter beneath the shelter of the bond. All that was guaranteed was the performance of the contract, that is, the building of the decks and abutments.

The parties have put their agreement in writing, and hence it is the best and only evidence of it. We must enforce it as they wrote it: *Walker v. Saricks,* 360 Pa. 594 (1949), 63 A. 2d 9; *Hagarty v. William Akers, Jr., Co., Inc.,* 342 Pa. 236 (1941), 20 A. 2d 317.

The case is ruled by *Commonwealth, to use v. Fidelity & Deposit Co. of Maryland,* 355 Pa. 434 (1947), 50 A. 2d 211, where we said: "'A bond given pursuant to a contract incorporated in the bond, will be construed in the light of the terms of the contract and the attendant circumstances, but "the obligation of a bond cannot be extended beyond the plain import of the words used": . . .' . . . Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning: . . .

"The compliance bonds in the instant case are conditioned on the contractor performing 'the terms and conditions of said contract, and his, their, or its obligations thereunder.' They do not contain any obligation to 'satisfy all claims and demands incurred in and for the same, or growing out of the same' . . ."

The appellants rely on three cases where recovery was allowed on performance bonds, but each is clearly distinguishable. In both *Pittsburgh, to use v. Parkview Construction Co.,* 344 Pa. 126 (1942), 23 A. 2d 847, and *Pennsylvania Turnpike Commission v. Andrews & Andrews,* 354 Pa. 138 (1946), 47 A. 2d 220, the bonds required not only performance but the satisfaction of all claims and demands growing out of the work. In *Pennsylvania Supply Co. v. National Casualty Co.,* 152 Pa. Superior Ct. 217 (1943), 31 A. 2d 453, the bond itself incorporated the contract in all particulars and the contract required the payment of bills.

The most that can be said for plaintiffs' case is the reference in the subcontract to a bond conditioned not

only on performance but on "the payment of all labor and material bills", and the agreement in the sub-sub-contract that Milonas "do all the work in accordance with plans and specifications . . . and also with the terms and conditions which are part of your [Mascaro's] contract with the Bero Construction Corporation." When Milonas provided a bond that covered performance only and not the payment of labor and material bills, he may have violated his contract, but that does not affect the liability of his surety.

Turning to the case against Milonas, it may be that the complaint was not artfully drawn. It alleges no direct promise by Milonas to pay labor and material bills, but this is not as fatal to the case against him as it is to the case against his surety. A promise to do a specific job carries by inference a promise to pay for the labor and materials that go into it, while a surety sells only the precise coverage that is selected and paid for. At least, where such inference is plain the case is not clear enough to warrant summary judgment or to foreclose the chance to amend, if desired: *Roth v. Golden Slipper Restaurant & Catering, Inc.*, 167 Pa. Superior Ct. 558 (1950), 76 A. 2d 457.

The complaint alleges the failure by Milonas to perform his contract by not paying listed bills and claims in connection with the job. This is enough to put him to his answer.

The order of the court below sustaining the preliminary objections and demurrer of the American Automobile Insurance Company is affirmed. Appellants shall pay the costs.

The order of the court below sustaining the preliminary objections and demurrer of Nicholas J. Milonas is reversed and the record is remanded for further proceedings consistent with this opinion. Costs to abide the event.